See *Hamilton* v. *The executors of M‘Guire, ante,* 355.

---

*Philadelphia.*

*Saturday,*
*January 3.*

**DUFFIELD** *against* **SMITH** and others.

**DEMURRER.**

A court martial cannot be held under the sole authority of the Governor, for the trial of militia who neglect or refuse to attend at the place of rendezvous, in conformity to the orders of the Governor, founded on the requisition of the President of the United States.

The 3d sect. of the act of 19th March, 1816, does not extend to suits brought before the passage of that act.

*Query,* If the provision in that section relative to actions of trespass, is not subject to the proviso, that they are constituted under the authority of the United States, or of this state ?

Though a party charged has appeared before a court martial, and confessed his guilt, he is not thereby estopped from contesting its jurisdiction.

THIS case was argued by *Gibson,* for the plaintiff, and *C. J. Ingersoll,* for the defendant.

TILGHMAN C. J. This is an action of trespass brought by *Edward Duffield* against *John Smith,* marshal of the *United States* for the district of *Pennsylvania, Isaac Deaves,* a captain of the *Pennsylvania* militia, and *Joseph Lloyd,* judge advocate of a court martial, for breaking and entering the plaintiff's house ; and an assault, battery, and imprisonment of his person, on the 1st *June,* 1813.

The defendants pleaded a justification of the trespass, to which the plaintiff demurred, and the defendants joined in demurrer. The plea is in substance as follows :

At the time of the alleged trespass, there was war between the *United States* and *Great Britain.* Previous to the said

alleged trespass, *viz.* on the 15th *April*, 1812, the President
of the *United States*, made a requisition of the Governor of
*Pennsylvania*, for 14,000 militia, to be detached, and organ-
ised, but not to be considered in the actual service of the
*United States*, till further orders.   On the 12th *May*, 1812,
the Governor, in compliance with the said requisition,
issued his general orders for the drafting, and organisation of
14,000 men.   On the 13th *May*, 1812, the adjutant general
of *Pennsylvania*, directed the several brigade inspectors to
make known the said general orders, to all the commanding
officers, and to direct them to use all possible means, for the
detaching and organising their several proportions of the said
men.   On the 3d *July*, 1812, *Daniel Sharp*, brigade inspec-
tor, issued brigade orders for detaching and organising the
quota of the first brigade ; and the plaintiff, being a free citi-
zen, liable to militia duty, was duly enrolled in the class list
of Captain *Deaves*, one of the defendants, in the 7th company
of the 24th Regiment, as of the first class ; which class, hav-
ing been duly drafted as a part of the 14,000 men, the plain-
tiff was notified thereof, on the 15th *July*, 1812, and required
to attend at the time and place appointed, for muster and
inspection, as a private, but neglected so to do.   On the 20th
*March*, 1813, the river and bay of *Delaware*, being block-
aded by a hostile squadron, and the *United States* threatened
with an invasion, the President made a requisition of the
Governor, for a detachment of 1,000 men, part of the said
14,000, to be placed under the orders of General *Bloomfield*,
military commander of the district; in compliance with
which requisition, the Governor, on the 5th *April*, 1813, or-
dered 1,000 men into the service of the Union.   On the 7th
*April*, 1813, the President issued an after order, and on the
14th *April*, the Governor issued an other order revoking so
much of his preceding order, as directed the detachment of
1,000 men, to go into actual service, but ordering them to be
organised, and held in readiness for actual service.

In obedience to these orders, Major *Vogdes*, commanding
the 24th regiment, by order dated 10th *April*, directed Cap-
tain *Hoffecker*, to notify the first class, including minors and
exempts, to meet for muster and inspection ; in execution of
which order, the plaintiff having been enrolled, drafted, and
directed to be in readiness, was notified when and where to
meet for muster and inspection, but neglected to attend.   On

1818.

DUFFIELD
*v.*
SMITH.

the 12th *April*, 1813, the brigade inspector ordered the detachment to assemble on the 19th of that month, to be officered and organised, according to the federal arrangement; of which orders the plaintiff had notice, but neglected to attend. The detachment, comprising the first class, of which the plaintiff was a member, was afterwards called forth into actual service, under the orders of General *Bloomfield*, and performed a tour of duty, but the plaintiff did not accompany them; but, without license or permission, remained absent during the tour of duty. On the 29th *October*, 1813, the Governor ordered the adjutant general to direct the several brigade inspectors, from whose brigades the drafted militia had been ordered into the service of the *United States*, to institute prosecutions against delinquents who had not marched, or had deserted after marching, and that the presiding officers of the courts martial, should certify the fines assessed to the marshal for collection. On the 4th *November*, 1813, the adjutant general directed the brigade inspector to institute prosecutions. Accordingly, *conformably to the provisions of the several acts of Congress, in such case provided, on the 25th January*, 1814, brigade inspector *Sharp*, required a court martial to be organised and assembled; and at the same time the said inspector required Captain *Hoffecker* to summon the delinquents. On the 7th *February*, 1814, the court martial was organised, and sat till the 10th *February*, inclusive. The Court being organised, issued a summons to the plaintiff to appear, and answer to a charge filed against him, for disobedience of the orders of the President of the *United States*, by non-attendance at the place of rendezvous, preparatory to a tour of duty, when required by brigade orders, in pursuance of the Governor's orders, under the President's requisition. The plaintiff did not appear before the court martial to answer to the charge, whereupon an order was issued *in the name, and by the authority of the United States*, commanding him to be brought before the court martial to answer the charge; but the plaintiff voluntarily, and without any restraint, appeared on the 15th *February*, 1814, submitted himself to the jurisdiction of the Court, not denying his disobedience of orders, but acknowledging and confessing the same, upon which he was adjudged to pay a fine of thirty dollars to the *United States*, or to be imprisoned one month for every five dollars, in case he should not pay; the fine to

be levied, and the judgment otherwise executed, according to the laws of the *United States*. This sentence was certified to the comptroller of the treasury and to the marshal, who, there being no effects, arrested the plaintiff and committed him to jail for a few minutes, until he paid the fine, when he was set at liberty.

It is not alleged in this plea, that the proceedings of the court martial were founded on any act of the Legislature of *Pennsylvania*; and the truth is, that at the time of holding that Court, there was no act of assembly in existence autho- rising a prosecution for disobedience of the President's orders. We are free then from all question of clashing jurisdiction. The state having made no law on the subject, if the proceed- ings can be justified, it must be under the authority of the *United States*. And indeed it is under their authority solely that the defendants have rested their jurisdiction. The Con- gress of the *United States* passed an act on the 28th *Februa- ry*, 1795, for calling forth the militia in certain cases, and upon the construction of that act, will the case before us principally depend. It has been contended, indeed, by the counsel for the plaintiff, that Congress had no power to inflict a penalty on the plaintiff, because he was not in the actual service of the *United States*. I agree that he was not in their actual service, because he never obeyed the call of the President, and the act of Congress gave him the alterna- tive, of going into service, or refusing, and being subject to a penalty. But I differ widely from the plaintiff's counsel, in the inference, drawn from the fact of not being in actual service, *viz*. that Congress had no right to punish him. By the Constitution of the *United States*, art. 1. sect. 8. the Con- gress have power " to provide for calling forth the militia to repel invasion." The defendant's plea sets forth, that there was a war between the *United States* and *Great Britain*, that the *Delaware* was blockaded by a hostile squadron, and the *United States* were threatened with invasion. The case had occurred, therefore, in which Congress might make such pro- vision, and how could it be made but by laws, inflicting a penalty on those who disobeyed the call ? In the nature of the case, the *calling forth* of the militia must precede their entering into *actual service*, and those who disobeyed the call could never be in actual service. According to the plaintiff's argument, then, they may refuse to enter into the

service, and yet be exempt from punishment, *because they have refused.* This would render the constitution a dead letter, and cannot therefore be sound doctrine. In the power to *provide for calling forth the militia,* is necessarily included, the power of inflicting a penalty on delinquents by the judgment of some Court of the *United States,* and of carrying the judgment into effect by an execution. It has not, in this state, nor as far as I know, in any state in the Union, been considered as an infringement of the rights of its citizens, to proceed to the trial of delinquent militia men, by courts martial. There can be no objection, therefore, to the act of Congress, for directing trials for the breach of their laws, to be in the same way. Let us now consider what provision has been made, for calling forth the militia, by the act of 28th *February,* 1795. By the first section the President is authorised to call forth such numbers of the militia as he may judge necessary, and *may issue his orders to such officer or officers of the militia as he may think proper.* By the fifth section, every officer, non-commissioned officer or private, who shall fail to obey the order of the President, shall forfeit a sum not exceeding one year's pay, and not less than one month's pay, *to be determined and assessed by a court martial;* and they shall be liable to be imprisoned, by the like sentence, on failure of payment of the fine, for one calendar month, for every 5 dollars of such fine. By the 6th section courts martial, for trial of the militia, shall be composed of *militia officers only.* The defendants do not allege, that the President ever gave orders for holding this court martial. On the contrary, it is evident, that the Governor supposed himself authorised, as commander in chief of the militia of *Pennsylvania,* to give orders for proceeding under the act of Congress. The language of the orders shews, that the source from which they flowed, was the authority of the chief executive officer of the state of *Pennsylvania.* The question then is simply this, did the act of *February,* 1795, contemplate courts martial held under any other authority than that of the President? The words of the act are, that the fine is to be determined and assessed *by a court martial,* and in the present instance, the fine was determined and assessed *by a court martial,* so that the case falls within the *words of the law.* If the *United States* had no courts martial of their own, the words would necessarily refer to the courts martial of the

several states. But having courts of their own, it appears to me, that the natural and obvious reference is, to those courts only. Can any instance be shewn, in which a law of the *United States* has *created an offence and inflicted a punishment*, and a state court has proceeded on that act without express authority? None such has been produced. When I say *express authority*, I mean that the state court must be expressly mentioned in the act of Congress. The general scope and intent of this act is, to vest certain powers in the President independent of state authority; and there is great reason why it should be so. It might happen, and it has happened, that the Governor of a state might not agree with the Government of the *United States*, as to the policy, or expediency of a war. In the late war, indeed, both the Governor and Legislature of *Pennsylvania*, agreed heartily with the General Government, and co-operated with all their might. But it was not so in every part of the Union. Now if a Governor, who differed from the President, might assume the office of carrying the act of *February*, 1795, into effect, very inconvenient consequences might follow. If the Governor had the direction of the courts martial, he might find it easy to thwart the views of the President. When the sentence is given, to whom is it to be submitted for approbation? I do not find, that in this case, it was submitted to, or approved by, any body, but the brigade inspector. The system of the *United States* would undoubtedly be more uniform, more vigorous, more consistent, and more complete, by construing those general expressions COURTS MARTIAL, as restricted to courts held by order of the President. But, besides considerations of general policy, there are not wanting, passages in the act, which indicate an intention, that the courts should be held by officers not subject to the orders of a state Governor. For instance, the provision, that courts for the trial of militia, should be held by *militia officers only*, applies to a situation, in which, the militia and the army of the *United States* are acting in conjunction, and in such a situation, it could not have been intended, to authorise a court martial under state authority. Again, the President had a right to issue his orders for calling out the militia, *not through the medium of the Governor, but directly to any officer he thought proper.* If he had pursued that course, I doubt whether any one would have contended, that the go-

1818.

DUFFIELD
*v.*
SMITH.

vernor might order a court martial. And yet, I do not see how that circumstance can have any effect in the construction of the law. It has indeed been contended, on the part of the defendant, that when the President made a requisition of the Governor, to order out the militia, he thereby virtually authorised him to hold courts martial for the trial of those who disobeyed. But I cannot perceive the force of that argument. It was a *requisition,* not a *command,* that the Governor would organise, arm, and equip a certain number of militia, and hold them in readiness to march at a moment's warning.· If he declined to comply with the requisition, the President might issue *his command* to any officer of the militia. But if he complied, it would be straining the requisition to an unnatural length, to construe it as if the President intended to impart to the Governor, an authority, not in the contemplation of the act of Congress. Indeed, it is not easy to conceive how such authority could be imparted. Because, the Governor was not in the service of the *United States,* and he stood upon too high ground, to be ordered into the service, even by the President. The Governor then, being commander in chief of the militia of *Pennsylvania,* but not being in the service of the *United States,* by what authority could the President impart to him the power, in his capacity of commander in chief, to hold courts martial, under the act of *February,* 1795 ? It certainly does not appear, that the Governor, when he issued his orders, supposed, that he was acting under the authority of the President. On the contrary, the whole style of the orders, plainly shews, that they emanated from the commander in chief of *Pennsylvania.* But, even if the President had authority to impart to the commander in chief of *Pennsylvania,* the power of holding courts martial under the act of Congress, it would be of no avail to the defendants in these pleadings. So material a circumstance cannot be *inferred,* by the Court, from any facts which are stated in the pleadings. It should have been distinctly averred, that the plaintiff might have denied it, and taken issue upon it, if he thought proper.

These are the sentiments which I have always held, with regard to the construction of this act of Congress, and I believe they are not opposed by any decision, either of this Court or of any Court of the *United States.* The subject was brought first before ·Ch. J. MARSHALL, on a *habeas*

*1818.*

*DUFFIELD*
*v.*
*SMITH.*

*corpus*, in *Meade*'s case.  The Chief Justice held the sentence of the court martial to be void, because *Meade* had been proceeded against, without notice ; a fatal defect, under whatever authority the court might have been held.  But in the course of his argument, he took a view of the act of Congress, and although he gave no positive opinion, yet the inclination of his mind, appears plainly to have been, that the courts martial intended by the act, were to be instituted under the authority of the *United States*.  Next came before this Court, at *Pittsburg*, also on a *habeas corpus*, the case of *Bolton*.  When the court martial was held in that case, no law had been made by the Legislature of *Pennsylvania*, authorising a court martial for the trial of militia men, who had disobeyed the call of the President.  But there, as here, the Governor had issued orders of his own authority.  The Court decided, that the proceedings of the court martial, could not be supported.  I perceive not, in whát the case of *Bolton* is distinguishable from that now before us, so that I consider it as an authority directly in point.  But subsequent to the time of holding the Court which passed sentence on *Bolton*, the state legislature passed an act, 28th *March*, 1814, making provision for courts martial, under the authority of the state, for the trial of persons, who having been called into service, by order of the President, neglected, or refused, to obey the call.  That act was well considered by this Court, after full argúment, in the case of *Houston* v. *Moore and others*, at *Lancaster*.  *Houston* brought an action of trespass against *Moore*, the deputy marshal of *Pennsylvania*, and a number of others, members, and judge advocate of a court martial, which had been convened and passed sentence on him under the act of assembly ; and the great question was, whether the act was consistent with the constitution and laws of the *United States*.  The Court decided, that it was consistent, and therefore the act was valid.  But it is evident at first glance, that the decisions in that case and *Bolton*'s, are in perfect harmony.  In *Bolton*'s case, the proceedings of the court martial were held to be void, because they were not in conformity with the act of Congress, *and there was no act of assembly to support them*.  In *Houston* v. *Moore*, &c. the proceedings were held to be *good, because there was an act of assembly to support them*.  In makıng this act of assembly, the legislature seem to have entertained the same

1818.

DUFFIELD
*v.*
SMITH.

opinion, which governed the court in *Bolton*'s case, that is to say, that the Governor had no authority to order a court martial, for if he had, the act would have been unnecessary. Finding no reason, therefore, either from my own reflections, or from the aguments of others, to doubt of the soundness of the decision in *Bolton*'s case, I am of opinion, that the proceedings of the court martial under consideration, were void, being unsupported by any law of the *United States*, or of this state.

Two other points of minor importance remain to be considered.

1. It is said by the defendants, that this action is prohibited by the 3d sect. of the supplement to the act of assembly for the regulation of the militia, passed *March* 19th, 1816. It is thereby enacted, " that the proceedings of the courts of appeal and courts martial shall in no case whatever be set aside or declared void, by any Judge or Court of law, on the ground of *informality* in such proceedings, provided such courts of appeal or courts martial shall be constituted under the authority of the *United States* or of this state ; and *no action of trespass shall be sustained in any court of record within this Commonwealth, in consequence of any proceedings had by any courts martial or courts of appeal.*" I am inclined to think, that the provision respecting actions of trespass is subject to the proviso, that the courts shall be constituted *under the authority of the United States, or of this state.* If so, the act will not help the defendants, because the gist of the plaintiff's case is, that this court martial was not constituted either under the authority of the *United States* or of this state. But without giving an opinion on that point, there is another circumstance which is decisive in excepting this case from the operations of the act of assembly ; and that is, that the action was brought *long before the passing of the act.* The legislature must never be supposed to have intended to destroy a vested right, by an *ex post facto* law, *unless they have clearly expressed such intention.* In this act they have not expressed such an intent, by any means, clearly. On the contrary, the words " *no action of trespass shall be sus-*" *tained,*" &c. may very properly be restricted to *future actions.* The opinion delivered by me, in the case of *The Commonwealth* v. *Duane*, 1 *Binn.* 401, is very applicable to this subject. *Duane* had been indicted, and found guilty, of

1818.

DUFFIELD
v.
SMITH.

a libel on Governor *M'Kean*, in a matter respecting the Governor's official conduct. After verdict and before judgment, a law was passed, by which it was enacted, " that from and after the passing of that act, no person should be *subject to prosecution by indictment*, for the publication of papers investigating the official conduct of officers, or men in a public capacity." It was decided, that the act embraced the case of *Duane*, but a distinction was taken between *civil* and *criminal* actions. My expressions were these :—" Had it been a *civil action*, I should have thought myself warranted in giving a different construction ; because then, it would have operated in a retrospective manner, so as to take away from a citizen a vested right. There is a wide difference between a civil and criminal action. In the latter, the Commonwealth only relinquishes its own right of inflicting punishment." Conformably to these sentiments, I am of opinion that the supplement to the militia act extends only to actions of trespass *commenced after its passage*.

2. The remaining point is, that the plaintiff, having appeared before the court martial, and confessed his guilt, is estopped from now controverting its jurisdiction. A court martial is a court of special and bounded jurisdiction. In order to make their proceedings valid they must act within their jurisdiction. Nor can the plea of the person accused confer a jurisdiction where it appears on the whole face of the proceedings that none existed. I consider this principle as sufficiently established by the following authorities, to which I shall barely refer, without entering more minutely into the subject. 1 *Saund.* 73. 4 *Dall.* 11. 2 *Wils.* 385. 1 *Freem.* 322. 2 *Mod.* 29. *Bull. N. P.* 83. 10 *Co.* 51. The *Marshalsea* case.

Upon the whole, I am of opinion that the matter alleged in the plea of the defendants, is no justification of the trespass, and therefore the demurrer is good, and judgment should be entered for the plaintiffs.

GIBSON J. I have no doubt but that the court martial contemplated by the act of congress of 1795, must be held by virtue of the authority of the *United States*. However, were it not for the decision in *Bolton*'s case, I would be disposed to think that a court-martial, ordered by the Go-

vernor of a state on which a requisition had been made, might be considered as held mediately by the order of the President. And this I would do on account of the utter impracticability of bringing the physical force of the country into the field if every order or act of an officer were to be scanned with the eye of a special pleader. Besides, if the *United States* should receive the forfeiture in pursuance of the sentence of a state court, they would be estopped from again proceeding against the delinquent, by a Court ordered immediately by the President, or any other officer of the *United States;* and the sanction given to the proceedings of the state court, by executing its sentence, would be conclusive evidence of the existence of a previous federal authority in the Governor to order it. It requires no great *astutia* to presume a delegation of power to the Governor to enforce, by courts martial, the demand of the President, particularly if it be considered not as an order of the President, given through the Governor, as an organ, but as a requisition for a state contingent, (and in this light I am inclined to view it;) for, in the latter case, the order to march is more peculiarly that of the Governor than of the President. I state these reasons as being of such weight as would probably have induced me to dissent in *Bolton's* case. But, at all events, the proceedings of such court should be pleaded as those of a court organized by federal authority, which has not been done here, and I agree that the want of an express allegation to that effect cannot be supplied by intendment. The demurrer must be sustained.

DUNCAN J. gave no opinion, not having heard the argument.

Judgment for the plaintiff.