Tilghman C. J.
The provisions of the act of 14th March, 1814, placed the plaintiff on very different ground from that ' on which he stood when-he commenced his action; because it had been decided, that under the act “for the sale of vacant lands within this Commonwealth,” passed the 3d April, •1792, it was not necessary to prove, that a warrantee was individually prevented from making a settlement; it was sufficient to prove, that the danger from the Indians at war with the United States, was such, as to deter any prudent man from attempting a settlement, prior to General Wayne’s treaty-made at Fort Grenville, in the month of December, \797.
The question will be then, whether this explanatory act of assembly extends to suits commenced before its■ passage. And that it does not, I am clearly of opinion, because nothing less than positive expressions would warrant the Court in giving a construction which would work manifest injustice. It must not be supposed, that the legislature meant to do injustice, and what but injustice would it be, to subject a man to the loss of his action, and the costs of suit, by a re*- • trospective law, although at the time when he commenced his suit, he was entitled by the established law, to recover Í This is not a new question. It has several times, happened, that acts of assembly have been made, prohibiting suits of a particular nature, and that suits of that nature were depending when the acts were passed. I have always declared my opinion, that such suits were not within the acts; and for this, I refer to the cases of The Commonwealth v. Duane, 1 Binn. 601. Moore (in error) v. Houston, 3 Serg. & Rawle, 169, and Duffield v. Smith, decided at Philadelphia, 3 Serg. & Rawle, 590. The same rule of construction was adopted by the Court of King’s Bench in England, in the case of Couch v. Jefferies, 4 Burr. 2460, by the Supreme Court of the United States, in Ogden v. Blackledge, *404 2 Cranch, 272, and by the Supreme Court of New York, in Dash v. Van Kleek, 7 Johns. 477; ánd indeed it is so con- ~ formable to the plain principles of justice, that were there no authorities, I should not.hesitat'e to be governed by it. Now so far have the legislature been from expressly declaring an. intention to extend this act to suits then depending, that a contrary intent may be deduced by reason irresistible. I have already cited that part of the act which prescribes the evidence, without which the person claiming under a war- ' rant shall not recover. The word recover may, without vio-' lence, be confined to suits commenced after the act; but a provision in the subsequent part of' the act, shews decisively, that such was the - meaning. I allude to the proviso, 44 that in case a warrantee shall, within two years from the 1st April, 1814, tender a conveyance of 150 acres, with the usual allpwances, including his improvement, clear of all expense, and the settler shall refuse to accept of the same, in such case the said settler, or those claiming under him, shall receive no benefit from this act.” This' tender ought, to be made be-. fore the commencement of the suit, otherwise injustice would be done to the settler, who had a right to defend himself under this law, as the case stood at the commencement of the-suit. The intent of the act being, then, to give the warrantee an opportunity of. recovering, by tendering a conveyance of 150 acres before he commenced his suit, it cannot extend to suits depending when the act was passed, because in those cases such previous tender would be impossible.' Whether we consider this case, then, upon the intention deducible from the words of the act, or upon principles of construction too strong to , be shaken, I am of opinion, that the Court of Common Pleas was mistaken in charging the jury, that the plaintiff was barred from recovering. The judgment must therefore be reversed, and a venire facias de novo awarded.
Gibson J.
It is not absolutely necessary to express an. opinion on the constitutional question, and I therefore decline it. To step out of our way to encounter a matter of this sort, were we ever so well convinced of the unconstitujtionality of the act, would, I apprehend, evince á culpable want of respect for á co-ordinate branch of the government. It is of no consideration that the question, will shortly arise, as it is said by counsel, on other acts of assembly, when this *405 court will be bound to pronounce on it. When it does so arise, it will be met with due deference, as well to. the legislature, as to'a conscientious discharge of our own official duty; but until then,-propriety forbids.a decision. • Neither, do I think it requisite to decide whether the case of a patentee be within the act of 1814, or not. That is a question about which I may be “permitted to say, I entertain doubts; the consideration of which, demands more time than I can at present bestow; and from the great length of time this cause has been pending in this Court, justice requires it should be decided at the present term.
The legislature, I am well persuaded, never intended the act in question should- be applied to, suits brought before it was passed.' I cannot impute to them, a deliberate intention to do injustice. By the proviso, it. is clear the legislature viewed the right of the warrantee as. the law then - stood, or at least under the construction then prevailing, as perfect and, complete. The whole act would seem to have been predicated on that notion. Could it then be any thing but rank, injustice, to compel a plaintiff, prosecuting those rights, which the law recognised as affording a good cause of action, to desist, pay costs, and begin again,. when those costs, were incurred at a time when he was in no default. But the case of a claim that would be barred by the statute of limitations, is decisive. Suppose an adverse possession for twenty-one years before the passing of the act; the plaintiff cannot.go on with the suit depending, not having tendered a deed for a. part of the land, before bringing his action, at,which time he never could have foretold, that it wo.uld be made a pre-requisite ; he cannot discontinue his' suit, perform the new con-, ditions, and begin, again; for the statute of limitations intervenes, and cuts him out, and thus, by the doctrine contended, for, he loses his land entirely. It is true; that in this case, the adverse possession commenced in 1796, and that therefore the plaintiff might have commenced a second action; after having made the conveyance required, and thus have, complied with the act, without being affected by the statute of limitations. But. in giving a construction to a statute, we must establish a general rule, equally applicable in all cases. We are fully warranted in giving this construction, by the cases cited; it is one, which the Courts, of this state have uniformly adopted, and.it has been held, almost against the ex~ *406 press provisions of a statute, in a country where legislation is uncontrolled by any constitutional check. It seems clear to me, the legislature never, in fact, intended this act to be applied to actions depending. It pre-súpposes the existence of a.power in the plaintiff to comply with its requisitions v before a suit be brought. If the legislature had intended, that the progress of actions then existing, should be arrested, they ought to have said so; they would have said so. On this ground, I think the judgment should be reversed.
Duncan J.
This ejectment was brought to the term of February, 1814, and was tried in November, 1814. The lands lie north and west' of the rivers Ohio and Allegheny, and Conewango Creek. The plaintiff gave in evidence, a warrant in the name of J. Rea, for 400 acres, dated 18th March, 1794 ¡¡' a survey thereon, of Match, 1795 j and a patent to himself, dated 18th May, 1808.
It was admitted by the defendants, that one of them, John. Thompson, under whom all claim, settled within the lines of this survey in 1796, and that he and they have ever since continued in possession. It was further admitted, that John Thompsonh&d obtained a vacating warrant, and a patent, dated 11th August, 1807; and the court gave it in charge to the jury, that the act of assembly, passed 14th March, 1814, was a bar to the plaintiff’s recovery. This opinion is excepted to, and the question now to be decided by this Court, is on the bar arising on the act of assembly.
On the part of the plaintiff, it is contended : 1st, That the act does not extend to this case, inasmuch as the plaintiff claims not on a warrant, but derives his title from a higher source, a warrant consummated by a patent; a contract, not executory, but executed.
2d. That it extends not to suits theretofore commenced, and then pending.
3d. That if it did so extend, it is an act, unconstitutional, and void.
The Court decide, that the act of 1814, is of itself, a flat bar to the plaintiff’s recovery; it is a bar per se, unlesá he prove certain facts. According to the law, as it stood when he commenced his action, it was not incumbent on him to prove these facts; other facts had been deemed and judged to amount either to a performance, or a suspension of the con *407 ditxons on which his warrant had been granted. An individuai prevention by the enemies of the United States was not required; the just terror of savage hostilities, depredations of the Indians, the terror that might fall virum constantem under the proviso of the act of 3d April, 1792, had been settled to excuse the rion-performance of an act rendered highly dangerous, if not absolutely impracticable, by imperious circumstances over which the party had no contróul; not a personal interruption by a savage foe; not a wanton exposure to danger, or a sacrifice of lives; and though the- condition of actual settlement, improvement, and residence, had. not been absolutely dispenséd with, the forfeiture was suspended ; and when the real terror from the enemy had subsided, the party should still honestly persist in his endeavours. But other preventions than those of ehemies, had been held to dispense with the condition; for it had been settled, that if a person, under the pretence of an actual settlement, should seat himself on lands previously warranted and surveyed, within the period ■ allowed under a fair construction of the law to the warrantee, for making his settlement, and withhold the possession, and obstruct him from making his settlement, he should derive .no benefit from such unlawful, act. These principles were settled by the Supreme Court at Sun-bur y, under the act of 3d April, 1792, entitled, “ An act to settle the controversy arising from contending claims to lands within this territory,” in an issue to which the state was a party. The very matter was put in issue, in order to settle the controversy, and establish a judicial construction of the act of April, 1792. 4 Dali.-237. 2 Smith, 219. Attorney General v. The Grantees. The plaintiff,- after this decision, obtained his patent..
This act of March, 1814, has been endeavoured to be supported by the counsel for defendants in error, as an explanatory law; if it be so, it cannot be expounded by any strained construction, but must operate according to its express letter, since otherwise, if any construction could be made against the express letter of the exposition made by the legislature, there would be n© end of expounding. Powell on Dev. 129. Explanatory acts are to be construed only according to their words, and not with any equity or intendment, for if a con-' átruction should be made against the express letter of the exposition, exposition would he endless. The Court cannot *408 vary the explanation further than is expressed in the statute. 3 Co. 33, Garth. 396. This act certainly introduces a new rule of evidence, and of law, and ought not to have a retrospective operation, in other cases than .where declared in the inost unequivocal manner. Dash v. Van Kleek, 7 Johns. 497. The letter of this act does not include the patentee “ before any person claiming by virtue of a warrant”’ Now the plaintiff claims, not only under a warrant, but something more. The warrant and survey are the inception of the legal title, and are considered as to many, yet not as to every purpose as the legal title. The warrant is but an executory contract with the state;•it is a contract executed by the patent. A line of distinction is drawn by the Courtin The Attorney General v. The Grantees, between persons holding under warrants, and by virtue of patents ; for á patentee, as is there held, led into error, and lulled into confidence by his patent that the conditions had been legally complied with, and therefore had remitted his endeavours therein, might be entitled to relief in equity. To this may be added, that the patentee has taken out his patent on the faith of this decision, at some expense.
■ The judges drew up their opinions .with just caution, subject to the provision in the 9th sect, of the act of April, 1-792; an act, declaring, that every man claiming by virtue of a warrant, should make entry, and bring his ejectment, within seven years, or should be barred from recovery. By no just construction could this be held to extend to persons claim-, ing by virttíe of a patent; for the plaintiff in ejectment need not introduce his warrant; his patent is prima facie evidence. As this act cannot be extended beyond its letter; cannot be taken by intendment, to include titles not included by name; and as the present plaintiff claims, not by virtue of a warrant alone, but under a warrant, and survey, and patent, this act does not interpose, as -a bar to prevent his recovery. Does the act extend to all cases, and prevent a recovery in suits commenced before its passage ? “ before any persons claiming by virtue of a warrant, shall recover.” Admitting the constitutional power to legislate retrospectively on contracts founded on prior legislative grants, does this act so retrospect on suits commenced ? The first principle in legislation is, that all laws are to commence in futuro. No *409 thing but the most unequivocal expressions can justify a retrospective operation. Let us illustrate this by judicial decisions, on the construction given to the statute of frauds, 29 Gar. 2. ft enacts* that from aud after the 24th June, no action shall be brought, to-charge any person upon an ngreement, without note in writing. There was .a parol promise of marriage, prior to the statute j it was determined in Gilmore v. Shuter, T. Jones's. R. 108. 2 Show. 17. 2 Mod. 310, that notwithstanding these imperative words, after that day, an action would lie ; for that a construction ought not to take effect, destroying existing rights, prior to the passage of the law, and that the statute only extended to promises made after that day. Now the words are equal, “ shall bring no action”—“ before any person claiming by virtue of warrant, shall recover.” Unrestrained as the British legislature is, by any written constitution ; and notwithstanding the boasted omnipotence of the parliament, such there has been- the construction. So in 1 Ld. Raym. 1352, and in Couch v. Jeffries, 4 Burr. 2460, which was an action for a penalty, and a verdict obtained .by the plaintiff; motion to stay judgment, on the ground of payment of the duties having been made into the stamp office, before the 1st September, 1769, under an act of panliament, which says, if the duties before .neglected to be paid, shall be paid in, on or before 1st September, 1769, the person who has incurred the penalties, shall be discharged of and from the said penalties. The question was, whether the act related to actions brought before.- It was decided by the Court, that it did not, and it was said by Ld. Mansfield, here is a right vested, and it is not to be imagined, that the legislature could, by general words, mean to take it away from the person in whom it was vested, and .who had been at costs in prosecuting it. They certainly mean future actions. It never can be the true construction of this act, to take away this vested right, and punish the innocent pursuer of it with costs. So here, the plaintiff, if he does not recover, must by this judgment, not only lose his own costs, but pay the defendant his. The right of the plaintiff, to recover under the law as it was settled when he brought his action, was a vested right; a right of Vecoveiy. The Court admits this, but withdraws it from the jury, on the supposed bar created by t.he act of March,X814>.
' We will proceed to test this judgment'of the. Court, by *410 decisions more applicable to our own government, viz. Livingston v. Livingston, 2 Caines, 300. It would require ex-preps words to take away a party’s existing rights. 4 Wash. 139, Turner v. Turner, Detinue for the recovery of two siavés, brought in 1783. Plaintiff offered in evidence, a parol gift of these slaves.- This, was admitted, and exceptions taken, and in the .Court of Appéals,- the judgment was reversed j the gift being subsequent to the act of 1758, which requires a deed, or will in -writing j and this, said the Court, although- the gift in this ease was such as was meant to be,declared valid by the acts of 1785, and 1787, yet, nevertheless the proof in the present case was inadmissible, and the gift void j these acts, being prospective^ and hot. retrospective of cases happening before, especially as to this gift on which the suit'was.-commenced in 1783. So in Elliott v. Lyell, in the same Court, 3 Call. 2.78. The question arose on a statute, enacting, that “■ the representatives of one joiqtly bound with another-for the payment of a debt, and dying in the life time of the latter, may be charged as if the obligors • had been bound severally, as well as jointlyit was decided not to embrace bonds given before the passing of the act. Roane j. said, 1 stand on this broad principle, that men ira regulating their contracts* shall have the benefit of existing laws, and not have , them overturned^, or affected," by future laws, which- they certainly could not foresee, or provide against. . Fleming J. Statutes, uve-prima facie prospective in.their operation; and retrospective laws, being odious in their nature, it ought never to be presumed the legislature intended to pass them, where the words will admit of any other meaning. Every construction, therefore, which goes to introduce a retroactive effect, and by- altering the engagements of men, to defeat justice,, is contrary to the principles of am enlightened jurisprudence j consequently, if the words be even doubtful, such construction ought to be made, as is most.consistent with, reason, and the rights of the parties to be affected. And Pendleton, . President, observes, that with-respect to binding retrospective.laws, in general, they merely vary the remedies on existing obligations, without addling to, or diminishing- their original force; and it must be acknowledged, that retrospective laws,- which either impair, or give force- to, existing obligations or contracts, contrary to their situation at the time they were entered into,. *411 are against’the-principles of natural justice. Citizens contract, on a view of existing laws, without anticipating future regulations. The federal constitution has prohibited the state legislatures from passing any such laws. In the case of Ogden v. Blockledge, 2 Cranch, 272, the effect of atí-explanatory? statute was under consideration. In that case, as in this, the statute was passed after the commencement oF the suit, and it was urged by the counsel, that as the suit had been brought before passing the explanatory act, it would not alter the past law, and make that to be law, which was not law at the- time. To declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative power. One of the fundamental principles of our government is, that the legislative power shall be separate from the judicial power; but, that at all events, the statute could not affect that - suit, which- was brought before the law was passed. The Coiirt stopped the counsel, considering the case too plain-to be urged. So in Gallego v. Quesnall's administrators, 1 Hen. & Munf. 204, an act, declaring, that in all cases where, hereafter, any. injunction shall be wholly dissolved, the bill shall stand dismissed of course, with costs, was by adjudication, confined to injunctions awarded since the act. In Dash v. Van Kleek, 7 Johns. 501, Ch. J, Kent observes, as this act was passed, not only after the escape, but after the suit brought, it-can apply to, and govern this case, but in one of two ways; it must be considered, either ás creating a new rule for the government of the past case, or, as declaring the interpretation of the former statutes, for the direction of the Courts. I should be unwilling to consider any act as so intended, unless that intention was made manifest by express words, because it would be a violation of fundamental principles, which is never to be presumed. The very essence óf a new law,, is a rule for future cases. The construction contended for on the part of the defendant, would make the statute operate unjustly. It would make it defeat a suit already commenced, or a right already,vested; it would be punishing an innocent party with costs, as well as divesting him of a right previously acquired, under existing Haws. In a very important and well considered case, The Commonwealth v. Beaumarchais, in the Court of Appeals, 3 Call. 168, the learned and venerable President of that Court, after defining the duties of the several departments, legisla *412 tive, executive, and judiciary, proceeds to state, if a contract is entered into in behalf of the government, and a contest should arise about the-meaning of the contract, it belongs to the judiciary to decide what that contract was, and if the legislature decide that question, they invade the province of the judiciary, contrary to the constitution. Judge. Yeates, in delivering the opinion of the Court, in The Attorney General v. Grantees, &c. 4 Dall. 237, on the question to be settled under the act of 1792, observes, it is true; the act of 1802, in its preamble, expresses, that it appears from the act of 1792, that the .Commonwealth regarded a full compliance with these conditions of settlement, improvement, and residence, as an indispensable part of the .purchase, or consideration of the land itself; but the true test of title must be resolved into the legitimate meaning of the act of 1792, extracted ex visceribus suis> independent of any legislative exposition. He commences the opinion, by declaring, that it is obvious the validity of the claims of the warrant holders and the actual settlers, must depend on the true and correct construction of the actof 3d April, 1792, considered as a solemn contract between the Commonwealth and each individual, leaving every case to depen.d on, and be governed by, its own particular circumstances, and declaring that the warrants may, or may not, be .valid; and effectual in law, against the .Commonwealth, according to the several times and existing facts acr companying such warrants. I will only add, that the construction contended for by the defendants in error, would make this act the exercise of a judicial power by the legislature; an injunction on the Court, to restrain.a recovery, in a cause pending, unless the plaintiff conveyed to the defendant, a portion of the property in dispute. •
On the grounds on which my opinion is founded, it is unnecessary to decide, whether, if this act did extend to this case, it would be unconstitutional and void; as I would not go out of my .way to court the discussion of a question of such delicacy and importance, so I would not fly from the inquiry, when it becomes necessary ; .when it is rendered so, it will be met in' this Court with all the respect due to every legislative act, but with a just regard to the constitutional rights of the people. • • ••
The importance of this question-will afford me a justification for the time I have taken in delivering this opinion. *413 I considered it my duty.to give the subject the fullest investigation; to state the grounds of that opinion ; the reasons and authority on which it is founded. It is for these reasons, arid these authorities, I have stated my opinion that the Court of Common Pleas erred, in withdrawing this case under its circumstances, from the jury, and in declaring that the act of 1.4th March, 1814, was a bar to the plaintiff’s recovery, as the act did not include the case then before the Court, and that judgment be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.