IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Ganoe,                                          :
                    Appellant                         :
                                                      :
              v.                                      :     No. 648 C.D. 2019
                                                      :     Argued: December 9, 2020
Commonwealth of Pennsylvania,                         :
Department of Transportation,                         :
Bureau of Driver Licensing                            :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge[1]
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge
            HONORABLE J. ANDREW CROMPTON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                            FILED: March 2, 2021

          Brian Ganoe (Licensee) appeals an order of the Court of Common Pleas
of York County (trial court) suspending his operating privilege because of his
conviction for a drug offense. Upon receiving the certified record of Licensee's
conviction, the Department of Transportation, Bureau of Driver Licensing
(PennDOT) notified Licensee that his operating privilege would be suspended
pursuant to Section 1532(c) of the Vehicle Code, 75 Pa. C.S. §1532(c), and Licensee
appealed. By the time of his hearing before the trial court, Section 1532(c) no longer
authorized a license suspension for a drug conviction. On appeal, Licensee argues
that the trial court lacked the statutory authority to enter an order suspending
Licensee's operating privilege. We agree and reverse.

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt
completed her term as President Judge.

**Factual Background**

On February 26, 2018, Licensee was convicted of violating Section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[2] 35 P.S. §780-113(a)(30) (relating to the unlawful manufacture, delivery or possession of a controlled substance). On March 24, 2018, PennDOT mailed a notice to Licensee informing him that his operating privilege would be suspended effective April 28, 2018, as a consequence of this conviction. PennDOT based this suspension notice on Section 1532(c) of the Vehicle Code, which stated as follows:

> (c) Suspension.-- The department shall suspend the operating privilege of *any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state, or* any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18 Pa. C.S. §2706 (relating to terroristic threats) committed on any school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school-sponsored activity.

*Former* 75 Pa. C.S. §1532(c) (emphasis added).[3] Six months later, the General Assembly deleted the above-italicized language from Section 1532(c). *See* Act of

---

[2] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101—780-144.

[3] At the time of Licensee's hearing, Section 1532(c) read, in relevant part, as follows:

> The department shall suspend the operating privilege of any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18 Pa. C.S. §2706 (relating to terroristic threats) committed on or against any school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school-sponsored activity….

75 Pa. C.S. §1532(c).

October 24, 2018, P.L. 659, No. 95 (Act No. 2018-95). The new law became effective in accordance with Section 5 of Act No. 2018-95, which states: "This act shall take effect in 180 days." *Id.* Stated otherwise, the above-described amendment to Section 1532(c) took effect on April 22, 2019.

Licensee petitioned to appeal his suspension, and a hearing on his appeal was held on April 24, 2019. At the hearing, Licensee argued that the General Assembly "clearly and manifestly" made the amended version of Section 1532(c) applicable to his appeal. Notes of Testimony, 4/24/2019, at 3 (N.T. __); Reproduced Record at 16 (R.R. __). Licensee argued that Act No. 2018-95 effected a procedural change in the law that applied to all license suspensions not yet in effect on April 22, 2019. Alternatively, Licensee asked the trial court to sustain his appeal in the interest of justice. He explained that he had turned his life around through drug treatment, education and full-time employment and that a license suspension would imperil his employment.

Consistent with its prehearing memorandum of law, PennDOT argued that it was the version of Section 1532(c) in effect when Licensee was convicted that governed Licensee's privilege to operate a motor vehicle after April 22, 2019. PennDOT argued that Act No. 2018-95 effected a substantive change in law because "it takes away a right," and, therefore, could not be applied "retroactively." N.T. 7; R.R. 20. The trial court agreed.

The trial court "dismissed" Licensee's appeal and "reinstated" PennDOT's license suspension. Trial Court Order, 4/24/2019; R.R. 4.[4] Licensee then appealed to this Court. The trial court's one-page PA. R.A.P. 1925(a) opinion

---

[4] The trial court's order consisted of a boilerplate form with a list of seven boxes to check. The trial court checked the box for "DISMISSED and the suspension shall be REINSTATED." Trial Court Order, 4/24/2019; R.R. 4.

incorporated by reference its oral ruling at the April 24, 2019, hearing, which simply adopted PennDOT's position without analysis.

This Court listed the matter for *en banc* argument and directed the parties to address the following questions:

1. Whether Section 1532(c) of the Vehicle Code, 75 Pa. C.S. §1532(c), is a penal provision subject to a strict construction under Section 1928(b)(1) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1928(b)(1).

2. Whether the language in the Act of October 24, 2018, P.L. 659, No. 2018-95 (Act No. 2018-95) supports the Pennsylvania Department of Transportation's [proffered] conclusion that the elimination of the statutory license suspension for a drug conviction (under any state or federal law) applies only to licensees whose conviction occurs on or after the April 22, 2019, effective date of Act No. 2018-95.

3. Whether the language in Act No. 2018-95 supports [Licensee's] proffered conclusion that the elimination of the statutory license suspension for a drug conviction (under any state or federal law) applies to licensees whose suspension is ordered by a trial court on or after April 22, 2019, regardless of the date of the licensee's drug conviction.

Cmwlth. Ct. Order, 11/2/2020.

## Appeal

On appeal,[5] Licensee contends that the trial court erred because at the time of his hearing, Section 1532(c) of the Vehicle Code did not penalize a drug conviction with the suspension of a driver's license. Licensee argues that the current

---

[5] Our review determines whether the trial court's findings are supported by substantial evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Finnegan v. Department of Transportation, Bureau of Driver Licensing*, 844 A.2d 645, 647 n.3 (Pa. Cmwlth. 2004).

version of Section 1532(c) applied to his license suspension proceeding because it had not yet been adjudicated as of April 22, 2019, *i.e.*, the effective date of Act No. 2018-95. In support, Licensee cites Governor Wolf's October 24, 2018, press release, which stated: "[t]his commonsense legislation promotes smart sentencing reform so that an individual may be able to keep their [sic] driver's license after it was taken away for non-driving infractions[.]"[6] Licensee posits that if Act No. 2018-95 did not apply "to ongoing litigation at the time of its passage," then the Governor's statement would not make sense. Licensee Brief at 6.

PennDOT argues that the trial court correctly applied former Section 1532(c) to Licensee's appeal. PennDOT argues that "the General Assembly very plainly *did not state* that the amended Section 1532(c) was to be applied retroactively" and "the Legislature clearly knows how to provide for retroactive application of a new or amended statute." PennDOT Brief at 12 (emphasis in original).

**Analysis**

PennDOT argues that because Licensee was convicted on February 26, 2018, the former version of Section 1532(c) of the Vehicle Code governed his appeal. Licensee argues that the date of his conviction is irrelevant. Rather, the pertinent issue is what law was in effect when the trial court was called upon to render a judgment on whether Licensee's operating privilege "should be suspended." 75 Pa. C.S. §1550(c)(2). Dispositive to this appeal is the proper construction of Section 5 of Act No. 2018-95.

---

[6] Governor Wolf's October 24, 2018, press release is available at https://www.governor.pa.gov/newsroom/governor-wolf-signs-bipartisan-criminal-justice-reform-bills-law (last visited March 1, 2021). It suggests that license suspensions not completed as of April 22, 2019, would end on that date.

5

## I.

We begin with a review of the Vehicle Code's adjudicatory process for any license suspension. The government cannot revoke a benefit or privilege it has granted unless it affords the affected person notice and an opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970). With respect to driver's licenses, the General Assembly has placed the pre-termination hearing before a court of common pleas. Until that hearing is concluded, the suspension cannot take place.

PennDOT begins the process with a notice of suspension, which gives the licensee 30 days from the mailing date of the notice to file a petition for appeal with a court of common pleas. 42 Pa. C.S. §§5571(b), 5572. Section 1550(b) of the Vehicle Code provides that the "filing and service of a petition for appeal from a suspension … *shall operate as a supersedeas until final determination of the matter* by the court vested with the jurisdiction of such appeals." 75 Pa. C.S. §1550(b)(1)(i) (emphasis added). While PennDOT's suspension is stayed, the court takes up the matter for a decision. Section 1550(c) states:

> (c) **Proceedings of court** -- *The court shall* set the matter for hearing upon 60 days' written notice to the department and *determine whether*:
>
> (1) the petitioner's driver's license should be denied or canceled;
>
> (2) *the petitioner's operating privilege should be suspended, revoked or recalled*; or
>
> (3) the petitioner's endorsement of commercial driver's license designation should be removed.

6

75 Pa. C.S. §1550(c)(1)-(3) (emphasis added). In short, it is the court that will "determine whether … the petitioner's operating privilege should be suspended[.]" 75 Pa. C.S. §1550(c)(2).

As we observed in *Riddle v. Department of Transportation*, 583 A.2d 865, 868 (Pa. Cmwlth. 1990), the "primary purpose of an automatic supersedeas … is to afford licensees a hearing and the opportunity for judicial review on the propriety of [PennDOT's] action before their driving privileges are suspended."[7] The trial court's decision concludes "the de novo review process and *constitutes a final determination of the matter*…." *Id.* (emphasis added). As our Supreme Court has explained, "PennDOT cannot impose *any sanction* until final determination of the matter." *Terraciano v. Department of Transportation, Bureau of Driver Licensing*, 753 A.2d 233, 235 n.3 (Pa. 2000) (emphasis added).

To be sure, PennDOT's notice of suspension becomes final when no challenge is lodged to it. In *Probst v. Department of Transportation, Bureau of Driver Licensing*, 849 A.2d 1135, 1142 (Pa. 2004), our Supreme Court held that PennDOT is entitled to administrative finality when its suspension notice is not appealed in accordance with the adjudicatory process in the Vehicle Code.

## II.

With these adjudicatory procedures in mind, we turn to PennDOT's proffered construction of Act No. 2018-95. PennDOT acknowledges that it may not impose a "suspension for any Drug Act conviction occurring on or after April 22, 2019[.]" PennDOT Brief at 10. However, PennDOT believes that it can, and must,

---

[7] The process described above is a different way of effecting the principles in the Administrative Agency Law, 2 Pa. C.S. §§501-508, 701-704, that a final order is not valid unless preceded by notice, a hearing, and an adjudication with findings of fact and conclusions of law. *See* 2 Pa. C.S. §§504, 507.

suspend the operating privileges of all licensees convicted of a drug offense before April 22, 2019. Notably, PennDOT cannot take action until it receives a certified record of the drug conviction. Accordingly, it will continue to suspend drivers' operating privileges long after April 22, 2019, depending on the diligence of the state and federal agencies providing the certified record of a licensee's drug conviction to PennDOT.[8]

There are several assumptions built into PennDOT's position. First, it assumes that its suspension notice is a final order and, as such, governed by former Section 1532(c) of the Vehicle Code, which was in effect at the time of its notice. Second, it assumes that Section 1532(c) of the Vehicle Code is a substantive, not procedural, law and, thus, Act No. 2018-95 effected a substantive change in law. Third, it assumes that Licensee's interpretation would give Act No. 2018-95 a retroactive effect. We reject these assumptions as either unfounded or irrelevant.

First, as explained above, PennDOT's suspension notice is not a final order. Where the licensee has filed a petition for appeal, a suspension cannot be implemented until the "de novo review process" results in a "final determination" by the trial court. *Terraciano*, 753 A.2d at 235 n.3; *Riddle*, 583 A.2d at 868. In the meantime, Section 1550(b) of the Vehicle Code automatically stays PennDOT's notice of suspension.

Second, whether former Section 1532(c) of the Vehicle Code is a procedural or substantive law is irrelevant but not a simple matter, as PennDOT supposes. Our Supreme Court has observed that "[t]he demarcation between

---

[8] For example, in *Middaugh v. Department of Transportation, Bureau of Driver Licensing*, 196 A.3d 1073 (Pa. Cmwlth. 2018), *affirmed*, __ A.3d __ (Pa., No. 45 MAP 2019, filed January 20, 2021), the entity responsible for reporting the licensee's conviction to PennDOT did not do so until two years and four months after the conviction.

8

procedure and substantive rights frequently is shadowy and difficult to determine." *Laudenberger v. Port Authority of Allegheny County*, 436 A.2d 147, 150 (Pa. 1981) (quotation omitted). This is because "procedure and substance [are] so interwoven …." *Id.* (quotation omitted). Indeed, they are interwoven in former Section 1532(c). It directs PennDOT to issue a suspension notice upon receiving a certified record of conviction, which notice triggers the adjudicatory process set forth in Chapter 15 of the Vehicle Code. In this respect, the provision is procedural. Former Section 1532(c) is substantive in that it imposes a loss of the licensee's operating privilege upon his conviction of a drug offense.

Third, PennDOT's retroactivity contention is conclusory and unfounded. PennDOT argues that Act No. 2018-95 "takes away a right," presumably from it, and, thus, cannot be applied retroactively. N.T. 7; R.R. 20. PennDOT is a creature of statute and able to exercise only those powers expressly conferred by the legislature. *Aetna Casualty and Surety Company v. Insurance Department*, 638 A.2d 194, 200 (Pa. 1994). PennDOT has no "right" or interest affected by the legislature's decision to eliminate the penalty in former Section 1532(c). *See, e.g.*, *Pennsylvania Game Commission v. State Civil Service Commission (Taccone)*, 789 A.2d 839 (Pa. Cmwlth. 2002) (holding that a state agency does not have a property right or interest affected by the State Civil Service Commission's denial of its request to remove a candidate from an eligibility list).

Further, as our Supreme Court has observed, "the terms 'prospective' and 'retrospective' are deceiving in their complexities." *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, 232 A.3d 629, 642 (Pa. 2020) (citation omitted). In any case, Licensee proffers not a retroactive but, rather, a prospective construction of Act No. 2018-95. He argues, simply, that after April 22,

9

2019, the trial court lacked authority to rule that his driver's license should be suspended for a drug conviction. This is because former Section 1532(c) ceased to exist on April 22, 2019, before the trial court entered its judgment. As explained above, a license suspension cannot take place until the *de novo* hearing before a trial court is complete. *Liero v. Department of Transportation, Bureau of Driver Licensing*, 844 A.2d 592, 593 (Pa. Cmwlth. 2004).

We reject each of the assumptions employed by PennDOT to advance its proffered construction of Act No. 2018-95. PennDOT's notice was not an adjudication because it is the court of common pleas that renders the "final determination" on a license suspension in a *de novo* proceeding. *Riddle*, 583 A.2d at 868. In any event, this case does not turn on whether Act No. 2018-95 was "retroactive" or "prospective" or whether it is a "substantive" or "procedural" law.[9] The only question is what the General Assembly intended by the language it chose.

Section 4 of Act No. 2018-95 excised the clause in former Section 1532(c) that suspended the operating privilege of any person convicted of "possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or other states[.]" *Former* 75 Pa. C.S §1532(c). Where a statute is "rendered inoperative, no further proceedings can be had to enforce it" except where the statute has been kept "alive for that purpose." *United States v. Chambers*, 291 U.S. 217, 233 (1934). *See also Stoever v. Immell*, 1 Watts 258, 258 (Pa. 1832) ("If the proceeding were imperfect when the act under which it was begun expired, what has been done since is simply void, and needs no reversal."). Here, the legislature did

---

[9] These concerns were addressed in *Blackwell v. State Ethics Commission*, 589 A.2d 1094 (Pa. 1991), to determine when a change in law should be applied on appeal *after* a judgment is entered. Here, the change in the operative statute took place *before* the trial court entered a judgment.

not keep the operative language in former Section 1532(c) alive beyond 180 days, and the legislature knows how to do this. For example, its amendment to Section 3806(b) of the Vehicle Code stated that the amendment would "*apply to persons sentenced on or after the effective date of this section.*" Act of October 27, 2014, P.L. 2905, No. 189, §2 (Act No. 2014-189) (emphasis added). The legislature could have extended the life of former Section 1532(c) beyond April 22, 2019, in this fashion, but it did not do so.

On April 22, 2019, the law ceased to sanction a drug conviction with the loss of a driver's license. The General Assembly did not tie the elimination of that sanction to the date of the licensee's conviction, as argued by PennDOT. PennDOT reads "[t]his act shall take effect in 180 days" to mean "[t]his act shall take effect in 180 days for persons convicted of a drug offense on or after the effective date." *Cf.* Section 2 of Act No. 2014-189 (connecting act's effective date to date of licensee's sentencing). The language in Section 5 of Act No. 2018-95 does not support PennDOT's construction thereof. PennDOT's construction requires the addition of words to those actually used. However, "[t]his Court's duty to interpret statutes does not include the right to add words or provisions that the legislature has left out." *Rogele, Inc. v. Workers' Compensation Appeal Board (Mattson)*, 969 A.2d 634, 637 (Pa. Cmwlth. 2009). The word "conviction" does not appear in Section 5 of Act No. 2018-95.

Our Supreme Court has established that a suspension of an individual's operating privilege is a "sanction." *Terraciano*, 753 A.2d at 235 n.3. This Court has also explained that "where a statute imposes punishment, such as the suspension or revocation of a professional license, for specified acts, such statutes are *penal* in nature." *McGrath v. Bureau of Professional and Occupational Affairs, State Board*

11

*of Nursing*, 146 A.3d 310, 316 (Pa. Cmwlth. 2016) (emphasis in original) (citation omitted). Section 1928(b)(1) of the Statutory Construction Act of 1972 states that penal provisions "shall be strictly construed[.]" 1 Pa. C.S. §1928(b)(1). Consistent therewith is the rule of lenity, which requires that any ambiguity in a statutory penalty must be construed "against the government." *McGrath*, 146 A.3d at 316 (quotation omitted) (emphasis omitted). To the extent there is ambiguity about whether Act No. 2018-95 became effective as of the date of a licensee's conviction, as argued by PennDOT, or as of the date of the suspension, as argued by Licensee, that ambiguity must be resolved in favor of the licensee and against the government.[10]

The trial court erred. On the day it "determine[d]" that Licensee's operating privilege "should be suspended," 75 Pa. C.S. §1550(c), the Vehicle Code no longer authorized this sanction. On April 22, 2019, the Pennsylvania law that punished persons convicted of a drug offense with the suspension of a driver's license expired, voiding what had been done afterwards. *Stoever*, 1 Watts at 258.

---

[10] At oral argument, PennDOT argued that former Section 1532(c) was not a penal provision, using the seven-factor test established by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), to determine whether a statute violates the prohibition against *ex post facto* laws set forth in the United States Constitution. Our Supreme Court has adopted this test for cases invoking the *ex post facto* clause of the Pennsylvania Constitution. *See, e.g.*, *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017). The *Kennedy-Mendoza* test determines whether a penalty can be imposed retroactively. This test is not used to determine whether a statutory provision is penal or remedial in nature. Rather, it is a test designed to determine whether the penal provision is so punitive that it violates the constitutional prohibition against *ex post facto* laws.

There is no limitation on a legislature's ability to reduce or eliminate a penalty, whether civil or criminal in nature. Here, Act No. 2018-95 eliminated the civil penalty of loss of a driver's license as a consequence of a conviction for a drug offense. An *ex post facto* analysis is neither relevant nor appropriate.

12

**III.**

Lastly, we address PennDOT's argument that precedent supports its assertion that "Licensee's conviction date for a drug violation controls whether a suspension will be imposed[.]" PennDOT Brief at 9. For this proposition, PennDOT relies upon *Schrankel v. Department of Transportation, Bureau of Driver Licensing*, 755 A.2d 690 (Pa. 2000), and *Becker v. Department of Transportation, Bureau of Driver Licensing*, 186 A.3d 1036 (Pa. Cmwlth. 2018). A close examination of this precedent shows, however, that it was the text of the operative statute that controlled the license suspension, not a general principle related to the date of the licensee's conviction.

*Schrankel* concerned a licensee arrested for driving under the influence (DUI) in Ohio before the Pennsylvania legislature had enacted the Driver's License Compact, 75 Pa. C.S. §1581. By the time the licensee was convicted by the Ohio court, the Compact had been enacted. The licensee argued that because he committed his offense before the Compact was enacted in Pennsylvania, his Ohio conviction had no relevance. In rejecting this argument, our Supreme Court explained that "reviewing the Compact as a whole, it is clear that it requires that the out-of-state authorities report *convictions* to the licensing state pursuant to Article III, and that Article IV dictates what effect such conviction will have in the home state."[11] *Schrankel*, 755 A.2d at 691 (emphasis in original). In sum, the language of the statute, *i.e.*, Article IV, made the conviction the operative event.

---

[11] Article III of the Compact states:

> The licensing authority of a party state *shall report each conviction* of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall *clearly identify the person convicted*, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether

13

*Becker* concerned a licensee charged with two DUI offenses over the course of a year. At the time of the arrests, a "prior offense" meant any DUI "conviction" that occurred before the "present violation occurred." *Former* 75 Pa. C.S. §3806(b). The licensee had not yet been convicted of his first DUI when charged with his second DUI offense. Thereafter, the legislature amended the definition of a "prior offense" to be "any conviction" that took place up to 10 years "*before the sentencing* on the present violation." *Id.* (emphasis added).[12] The licensee was convicted of the first DUI charge before he was sentenced on the second DUI charge. The timing of the licensee's conviction and sentencing on the two DUI charges made him a repeat offender, and this Court rejected the licensee's argument that the amended version of Section 3806(b) did not apply to him.[13] Applying the plain language of Section 3806(b), this Court upheld PennDOT's conclusion that the licensee had a "prior offense," which subjected him to a longer suspension period.

PennDOT argues that *Schrankel* and *Becker* establish that the date of conviction always controls in driver license suspensions. Neither case establishes

---

> a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.

75 Pa. C.S. §1581, art. III (emphasis added). Article IV provides, in part:

> The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, *shall give the same effect to the conduct reported, pursuant to Article III of this compact*, as it would if such conduct had occurred in the home state[.]

*Id.*, art. IV(a) (emphasis added).

[12] The effective date provision stated: "The amendment of 75 Pa. C.S. §3806(b) shall apply to persons sentenced on or after [December 26, 2014,] the effective date of this section." Section 2 of Act No. 2014-189.

[13] We also rejected the licensee's argument that Act No. 2014-189 was improperly retroactive. We explained that "a statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." *Becker*, 186 A.3d at 1039 (quoting *Alexander v. Commonwealth*, 880 A.2d 552, 559 (Pa. 2005)).

14

this broad principle. To the contrary, *Schrankel* and *Becker* stand for the principle that the precise words of the statutory provision at issue govern the outcome. In this regard, each holding supports this Court's reversal of the trial court in this appeal. *Schrankel* and *Becker* are inapposite to PennDOT's argument.

The effective date of Act No. 2018-95 does not refer to the date of the licensee's conviction or sentencing; it contains no qualifying language at all. At the time the trial court decided Licensee's appeal, April 24, 2019, Section 1532(c) of the Vehicle Code did not authorize a suspension for a drug conviction.

**Conclusion**

We hold that the trial court erred in dismissing Licensee's appeal and ordering that his license should be suspended for the reason of his drug conviction. A court must enforce the law as it exists when the court renders its judgment. *Chambers*, 291 U.S. at 233; *Stoever*, 1 Watts 258. When the trial court entered the order that Licensee's operating privilege "should be suspended," 75 Pa. C.S. §1550(c)(2), the Vehicle Code no longer punished persons convicted of a drug offense with the suspension of their operating privilege.[14]

For these reasons, we reverse the trial court's order and direct PennDOT to reinstate Licensee's operating privilege.[15]

_____
MARY HANNAH LEAVITT, President Judge

---

[14] The dissent emphasizes the potential for inequitable treatment of similarly situated licensees. However, inequities will occur whenever there is a change in law. If the line of demarcation for applying Act 2018-95 is, as the dissent proposes, the date of conviction, then two licensees who commit the same offense on the same day will experience different license suspension outcomes, depending on whether their conviction occurred before or after April 22, 2019.

[15] Our holding is limited to the facts of this case. We do not decide whether a licensee who appeals a suspension ordered by a court of common pleas before April 22, 2019, while *former* 75 Pa. C.S. §1532(c) was in effect, will be entitled to relief on appeal to this Court.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Ganoe, : 
            Appellant : 
             : 
        v. :   No. 648 C.D. 2019
             : 
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

# **O R D E R**

AND NOW, this 2nd day of March, 2021, the order of the Court of Common Pleas of York County (trial court) docketed April 24, 2019, in the above-captioned matter is REVERSED, and the Department of Transportation, Bureau of Driver Licensing is directed to reinstate Licensee's operating privilege.

                                   _____

                                   MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Ganoe,                              :
                          Appellant       :
                                          :
              v.                          :    No. 648 C.D. 2019
                                          :    Argued:  December 9, 2020
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing                :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


DISSENTING OPINION
BY JUDGE CROMPTON                    FILED:  March 2, 2021


          Respectfully, I dissent.  As the majority acknowledges, former Section
1532(c) of the Vehicle Code, *former* 75 Pa.C.S. §1532(c), authorized the
Commonwealth of Pennsylvania, Department of Transportation (PennDOT) to
"suspend the operating privilege of any person upon receiving a certified record of
the person's conviction of any offense involving the possession, sale, delivery,
offering for sale, holding for sale or giving away of any controlled substance."
*Former* 75 Pa. C.S. §1532(c).  The Act of October 24, 2018, P.L. 659, No. 95 (Act

95), repealed this provision. Section 5 of Act 95 states: "This act shall take effect in 180 days." *Id.* That date was April 22, 2019.

There is no dispute that Brian Ganoe (Licensee) was convicted of delivery of a controlled substance in violation of Section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[1] 35 P.S. §780-113(a)(30), on February 26, 2018, and that Licensee was notified by PennDOT, on March 24, 2018, that his driver's license would be suspended for two years as a result of his conviction. There is also no dispute that the license suspension was set to begin on April 28, 2018. At that point, Act 95 was still approximately six months away from being signed into law and nearly one year away from the law's effective date of April 22, 2019. The Court of Common Pleas of York County (Trial Court) held a hearing on Licensee's appeal of PennDOT's suspension notice on April 24, 2019, and upheld the license suspension imposed by PennDOT.

The majority argues that the prevailing case law suggests Licensee is entitled to the application of the law in effect at the time of judgment. In this regard, the majority would have us accept that, Licensee, here, was entitled to application of Act 95 to his license suspension because the final judgment on the matter was not reached until the Trial Court ruled on April 24, 2019 – two days after the effective date of Act 95. I disagree.

Act 95 expresses the clear intent of the General Assembly to make the new law effective on April 22, 2019. Thus, at that point in time, anyone convicted of a Drug Act violation was no longer subject to the license suspension provision of former Section 1532(c) of the Vehicle Code. *Former* 75 Pa.C.S. §1532(c). The majority does not deny that PennDOT's notice, *i.e.*, the suspension of Licensee's

---

[1] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 – 780-144.

JAC - 2

operating privilege, was lawful at the time it was issued. However, the majority argues that this notice became unlawful before the trial court entered its judgment. I do not believe that PennDOT's lawful notice, issued on March 24, 2018, suddenly became unenforceable because the appeal process continued until April 24, 2019.

The majority disagrees with PennDOT's contention that its notice to Licensee was a final order. Quoting Section 1550(b)(1)(i) of the Vehicle Code, which states "filing and service of a petition for appeal from a suspension . . . shall operate as a supersedeas until final determination of the matter by the court vested with the jurisdiction of such appeals,"[2] the majority concludes that PennDOT's suspension was stayed while the Trial Court set the matter for hearing on whether Licensee's operating privilege should be suspended. Thus, PennDOT's notice had not become a final order. Again, I disagree. While it is true that Licensee exercised his appeal rights, PennDOT had, in fact, issued a final agency order. Said otherwise, there was no further recourse for Licensee at the agency level within PennDOT. This, in turn, is what established Licensee's right to appeal to the Trial Court. The stay on PennDOT's imposition of the license suspension did not abrogate Licensee's conviction under the Drug Act in February 2018, or the notification by PennDOT that his license was to be suspended beginning in late-April 2018, and it did not absolve Licensee from the two-year license suspension imposed by PennDOT and later affirmed by the Trial Court.

The majority correctly notes that Licensee's appeal to the Trial Court operated as a supersedeas. However, this merely preserved the status quo until the suspension could be reviewed. For the Trial Court to conduct a review of PennDOT's action, *i.e.*, the suspension of Licensee's driver's license, it necessarily

---

[2] 75 Pa.C.S. §1550(b)(1)(i).

had to examine that action in light of the law in effect at the time it was taken, not against a different rule that was to be applicable to future licensees. In other words, the Trial Court's review of the appropriateness of PennDOT's decision could only be a true review if evaluated against the standard PennDOT correctly and reasonably relied on in the first place. In addition, the majority's position allows individuals to reap the benefits of lengthy appeals processes and, consequently, leads to the potential for many inequities in the law's application.[3]

It is essential to note that, in Pennsylvania, while "[t]he general rule . . . is that appellate courts apply the law in effect at the time of appellate review . . . this general rule is not applied rotely . . . ." *Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014). In the venerable case of *Commonwealth v. Robb*, 14 Pa. Super. 597 (1900), the Superior Court determined that a change in law, which occurred while a tax matter was on appeal, did not inure to the benefit of an individual who was in the process of appealing his tax liability as assessed under an earlier law. As the court in *Robb* stated:

---

[3] These types of inequities (albeit in the context of criminal law) were addressed in the following excerpt from *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, University of Pennsylvania Law Review, 121 U. Pa. L. Rev. 120, 138 (1972):

> Applying the mitigatory act only to cases in which there has not been a judgment in the trial court provides certainty but is arbitrary and will produce inequities . . . . Under this scheme, the punishment authorized for two people who commit the same crime on the same day will depend upon who comes to trial first.

> In addition, a "defendant who pleads guilty or does not appeal will be subject to the harsher penalty while a defendant who does appeal will get the benefit of the mitigatory provisions enacted while his appeal was pending."

[W]hile all acts or parts of acts--general, special or local--inconsistent therewith, are repealed, this act referred to the manner and system of providing revenue after it became a law, and it was not intended to relieve delinquents who had been properly assessed under existing laws from paying their share of the public burden. In the case before us, the appraisement was made February 20, 1899, and the appeal was taken on April 10, 1899, under the law then in force[4] . . . . The repealing clause did not stop proceedings already commenced, as it did not in any manner affect the jurisdiction of the court to determine the liability of appellant for the tax due by him for 1899.

In the equally venerable case of *Bedford v. Shilling*, 4 Serg. & Rawle 401 (1814), our Supreme Court noted that "[s]tatutes are prima facie prospective in their operation; and retrospective laws being odious in their nature, it ought never to be presumed the legislature intended to pass them, where the words will admit of any other meaning." *Id*. at 410. "One of the fundamental principles of our government is that the legislative power shall be separate from the judicial power; but, that at all events, the statute could not affect that suit, which was brought before the law was passed . . . . The very essence of a new law is a rule for future cases." *Id*. at 411. Just as the legislative power is separate from the judicial power, to follow the majority's position in the matter before us would divest the executive branch of its power to enforce a legitimate final agency determination, which was premised on the authorized law at the time the decision was made.

Although *Blackwell v. State Ethics Commission*, 589 A.2d 1094, 1099 (Pa. 1991) (*Blackwell III*), is oft-cited for the proposition that Pennsylvania courts "apply the law in effect at the time of appellate decision," we note that, in this same

---

[4] The change in law occurred as a result of the Act of May 2, 1899, P.L. 184, 72 P.S. §2621, which was subsequently repealed by the Act of May 7, 1943, P.L. 237.

JAC - 5

case, our Supreme Court also affirmed its adoption of the view of the United States Supreme Court that the determination of whether to apply a new rule retroactively or prospectively is a function of three considerations. Those considerations are: "(1) the purpose to be served by the new rule, (2) the extent of the reliance on the old rule, and (3) the effect on the administration of justice by the retroactive application of the new rule." *Blackwell III*, 589 A.2d at 1099. This same standard was enunciated again more recently by our Supreme Court in *Passarello*. In the present matter, licensed drivers, as well as PennDOT, were able to rely on the plain language of former Section 1532(c) of the Vehicle Code, *former* 75 Pa. C.S. §1532(c), until April 22, 2019. This meant that Licensee, and similarly situated licensees, expected to be subject to a two-year license suspension for violating the Drug Act, and PennDOT expected to suspend those licenses accordingly. Thus, the effect of the application of the new rule, under the majority's standard, would result in unequal administration of justice among those already convicted of Drug Act violations and subject to license suspension, based merely on the status of their litigation at the time the change in law became effective.

I agree with our Supreme Court's view in *Passarello* that the application of the law in effect at the time of appellate review should not be applied in rote fashion. In the present matter, the majority's position leads to avoidable inequities between licensees, based on the amount of time the licensee is able to continue his/her appeal. The General Assembly left no question about who was to benefit from the change in Section 1532(c) of the Vehicle Code and when that benefit was to occur. Further, there is no express statutory language, nor any expression of manifest intent by the General Assembly, that Act 95 was to apply to cases on appeal as of the effective date of the law. Where the General Assembly's

words are clear, as they are here, we are presented with the perfect example of a situation in which the law in effect at the time of judgment should not be applied rotely. To read-in the application of the new law to Licensee's appeal unnecessarily undermines the basic fairness in its application between similarly situated licensees.

The majority asserts that the General Assembly knows how to effectuate the outcome it seeks to achieve and that it could have kept former Section 1532(c) of the Vehicle Code alive beyond April 22, 2019, if it chose to do so. However, in this same vein, the General Assembly also knew how to provide relief to licensees whose appeals were in process as of the effective date of the amended statute, but it chose not to do so. I posit that the General Assembly intended April 22, 2019, to be the line of demarcation in the law going forward.

For all of the reasons I address above, I would affirm the Trial Court's order dismissing Licensee's appeal and reinstating the two-year suspension of Licensee's operating privilege imposed by PennDOT.[5]

_____
J. ANDREW CROMPTON, Judge

Judges Cohn Jubelirer and Covey join in this dissenting opinion.

---

[5] I do not resolve the issue of other scenarios that are not currently before this Court. Accordingly, I would limit this Court's holding to the specific facts of the present case.